UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY CALEB HATFIELD,

     Petitioner,

v.

KENNETH T. MCKEE, *Warden*,

     Respondent.

Case No. 15-10101
Honorable Laurie J. Michelson

---

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]**

---

Jeremy Hatfield was convicted in a Michigan court of, among other crimes, first-degree felony murder. He asks this federal court to vacate his convictions. In particular, he seeks a writ of habeas corpus on two grounds: that insufficient evidence supports his first-degree-felony-murder conviction and that a witness's recounting of another's confession violated his Sixth Amendment right to confront the confessor. For the reasons that follow, the Court finds that neither ground warrants habeas corpus relief.

## I.

### A.

On the evening of July 12, 2011, Ernie Griffin and his friend, Dexter Pruitt, were walking toward the EZ Stop store in Saginaw, Michigan. (R. 12, PID 246, 271, 273.) A group of three men later identified as Corwin Roberson, Enese Dixon, and Hatfield attacked the two friends. (R. 12, PID 272, 291–92, 294.) Roberson, Dixon, and Hatfield may have been trying to rob Griffin or merely trying to recover Roberson's gun from Griffin. (*Compare* R. 12, PID 275, *with* R. 12, PID 374.) In either case, Roberson grabbed Griffin from behind and slammed Griffin to the ground.

(R. 12, PID 274, 290.) Then Roberson, Dixon, and Hatfield all started kicking and punching Griffin. (R. 12, PID 276, 281, 289–90, 294, 298, 300.) Griffin was then shot.

The identity of the shooter was disputed. At Hatfield's trial in state court, Pruitt testified that after helping Griffin to his feet, he saw, out of the corner of his eye, Hatfield with a gun. (R. 12, PID 276.) Pruitt said he pushed Griffin to get him to move, heard four or five gunshots, and ran. (R. 12, PID 277.) Luke Spear, who was not present at the time of the attack, testified that Roberson confessed to him that Hatfield shot Griffin five times in the back. (R. 12, PID 374–75.) But Dewayne Hale, who had been working at the EZ Stop that July night, testified that Hatfield was not the shooter. (R. 12, PID 291.) Yet it appears Hale testified that Hatfield was involved in the attack. (*See* R. 12, PID 292.) Jessica Rivera, who had witnessed the attack from her nearby apartment (R. 12, PID 298), testified (albeit not clearly) that she saw Roberson pull out a gun and that Roberson fired at least the first shot at Griffin (R. 12, PID 299, 302–03). Moreover, when asked about Hatfield, Rivera said she did not recognize him and did not know whether he was one of the attackers. (R. 12, PID 303.) Jason Clements (who was with Rivera at the time (R. 12, PID 298)) similarly identified only Roberson as one of the attackers (R. 12, PID 296) and said he did not recognize Hatfield (R. 12, PID 297).

Ultimately, Griffin died. He had sustained, among other injuries, a fragmented collar bone that "nicked or perforated" a major vein. (R. 12, PID 382–83.) He also sustained a gunshot wound to the back and four to the area around the backside of his leg. (R. 12, PID 382–83.) The perforated vein or the gunshot wound to the back would have been fatal without the other. (R. 12, PID 383.)

A jury convicted Hatfield of, among other things, first-degree felony murder with larceny or torture being the felony underlying that offense. (R. 12, PID 434–36, 438.) In Michigan, a first-

degree felony murder conviction carries with it a mandatory sentence of life without parole. Mich. Comp. Laws § 750.316(1).

## B.

Hatfield appealed. He claimed that the prosecution had not produced evidence sufficient for a jury to find beyond a reasonable doubt that he had committed or aided and abetted larceny or torture and so his first-degree felony murder conviction could not stand. (*See* R. 12, PID 503–05.) He also claimed that Spear's testimony about Roberson's confession was contrary to both Michigan's prohibition on hearsay and the Confrontation Clause as applied in *Bruton v. United States*, 391 U.S. 123 (1968). (R. 12, PID 510–14.) In an explained opinion, the Michigan Court of Appeals rejected these claims. *See generally People v. Hatfield*, No. 311531, 2013 WL 5629781 (Mich. Ct. App. Oct. 15, 2013) (per curiam).

Hatfield then sought leave to appeal to the Michigan Supreme Court (R. 12, PID 546–51), but that court was not persuaded that it should review Hatfield's claims, *People v. Hatfield*, 843 N.W.2d 499 (Mich. 2014).

## C.

In January 2015, Hatfield filed the petition for a writ of habeas corpus now before this Court. (R. 1.) As he did on direct appeal, Hatfield claims that the evidence introduced at trial was insufficient to support his first-degree-felony-murder conviction. (R. 1, PID 7.) He also asserts a violation of the Confrontation Clause, but, as will be discussed, that claim is not limited to *Bruton*. (R. 1, PID 9.)

Two months after filing his petition, Hatfield asked this Court to stay this case so he could seek relief from judgment from the state trial court. (R. 6–8.) This Court decided not to stay the case because Hatfield failed to say what he intended to pursue in state court and so this Court had

no way to decide if the claims had any merit. (R. 9.) Days before this Court issued its opinion on Hatfield's stay motion, Hatfield filed a motion for relief from judgment with the state trial court asserting claims that were not part of his petition for habeas corpus. (R. 12, PID 620–30.) Although that court has since denied relief, *People v. Hatfield*, No. 11-036325-FC (Mich. 10th Cir. Ct. May 4, 2015) (order denying motion for relief from judgment), Hatfield has not sought to amend his petition to add the claims the state court rejected.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA)—28 U.S.C. § 2254 in particular—"confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

### A.

The Court begins with Hatfield's claims based on Spear's recounting of Roberson's confession to the jury. (*See* R. 1, PID 9.)

**1.**

Before turning to the law, a few more facts are useful.

Following the attack on Griffin, Roberson was jailed and, for 26 days, shared a cell with Spear. (R. 12, PID 373.) At some point during this period, Roberson received notice that he had been charged with murder. (R. 12, PID 374.) Roberson began asking Spear questions about the elements of that crime and ultimately recounted some of the attack, including that Hatfield shot Griffin. (R. 12, PID 370, 374, 376.) Over the next week or two, Spear, partly motivated to shorten his prison time, asked follow-up questions "to get the whole story from" Roberson. (R. 12, PID 369–70.) Roberson never mentioned the victim's name or that there was a third attacker. (R. 12, PID 376.)

After he was no longer sharing a cell with Roberson, Spear wrote a letter to the prosecutor's office. (R. 12, PID 377–78.) Detectives then went to the prison to interview Spear. (R. 12, PID 377.) They told him that the most that could be done for him was a letter to the parole board. (R. 12, PID 378.) Even so, Spear thought "the right thing to do" was to talk with the detectives. (R. 12, PID 370, 378.) So he did and they confirmed that Spear knew details about Griffin's murder that had not been released to the public. (R. 12, PID 379.)

At Hatfield's trial, Spear told the jury that he shared a cell with Roberson, that Roberson recounted the attack after learning of his murder charge, that Roberson told him that he gave Hatfield his gun to hold, and that "[Roberson had] said that Jeremy [Hatfield] shot [the victim] in the back." (R. 12, PID 373–75.)

**2.**

Although Hatfield argued to the Michigan courts that Spear's recounting of Roberson's confession violated the doctrine established in *Bruton v. United States*, 391 U.S. 123 (1968), the

Warden says Hatfield did not present any such claim in his habeas corpus petition and so "it has been abandoned." (R. 11, PID 67.)

The Warden makes a fair point. On direct appeal, Hatfield did not make a broad Sixth Amendment challenge to Spear's testimony. Instead, he more narrowly focused on *Bruton* and explicitly disclaimed a violation of *Crawford v. Washington*, 541 U.S. 36 (2004). (*See* R. 12, PID 507–10.) Yet, in his petition for habeas corpus, Hatfield reverses ground: he nowhere mentions *Bruton* and instead asserts *Crawford*. (R. 1, PID 9.) Thus, one reasonable reading of Hatfield's petition is that Hatfield has abandoned *Bruton*.

Even so, the Court will assume that Hatfield raised a claim based on *Bruton*. Hatfield is proceeding *pro se* so his petition must be read liberally. And on a generous reading, the petition could be interpreted as attempting to raise the same claims he had raised on direct appeal: the heading of Hatfield's insufficient-evidence claim in his petition is word-for-word the heading in his state court brief (*compare* R. 1, PID 8, *with* R. 12, PID 502) and it appears that by mere oversight he left out the heading for his claim about Spear's testimony. Had he included it, that heading would have tipped the Warden off that Hatfield was making a *Bruton* claim. Indeed, the normal course, indeed the course demanded by § 2254(b), is for a petitioner to present only claims he exhausted in the state courts. Moreover, in his reply brief, Hatfield not only explicitly raises *Bruton*, he explicitly incorporates his state court of appeals' brief, which, as mentioned, focused on *Bruton*. (R. 14, PID 634, 638.) Finally, because the Court finds that Hatfield's *Bruton* claim does not warrant habeas corpus relief, the Court sees little prejudice to the Warden in addressing it.

Before turning to what the Michigan Court of Appeals said about Hatfield's *Bruton* claim, it is helpful to articulate that claim in more detail.

In *Bruton*, Evans had confessed to authorities that he and Bruton had committed an armed robbery. 391 U.S. at 124. At their joint trial, the prosecution introduced the confession but Bruton had no ability to cross examine Evans because Evans did not take the stand. *Id.* at 125, 127–28. The trial court attempted to remedy this infringement on Bruton's Confrontation Clause rights by instructing the jury to only use Evan's confession against Evans, not Bruton. *Id.* at 124–25. The Supreme Court held that the jury instruction was insufficient to avoid a Confrontation Clause violation: "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135.

In his brief to the Michigan Court of Appeals, Hatfield conceded that Spear's statements were nontestimonial and thus *Crawford* was not applicable. (R. 12, PID 508.) But, argued Hatfield, *Bruton* extended to both testimonial and nontestimonial statements. (R. 12, PID 508–09 (citing *People v. Larabee*, No. 275658, 2008 WL 2697550, at *6 n.4 (Mich. Ct. App. July 10, 2008)).) Thus, it was and is Hatfield's position that even if Roberson's statements to Spear were nontestimonial, his right to cross-examine Roberson as established in *Bruton* was violated. (R. 12, PID 507–10.)

The Michigan Court of Appeals addressed Hatfield's *Bruton* claim "on the merits." *See* 28 U.S.C. § 2254(d). In particular, the state appellate court found that *Bruton*'s rule did not apply to Hatfield's trial because Hatfield was not tried with Roberson (or anyone else): "*Bruton* only applies in the context of a joint trial and only when the codefendant's statement is inadmissible against the defendant. In this case, there was no joint trial, and as will be discussed, the statements were admissible against defendant pursuant to MRE 804(b)(3); thus, the trial court did not commit

any error in failing to apply *Bruton* to the instant case." *Hatfield*, 2013 WL 5629781, at *3 (citation omitted).

The Court cannot say that interpretation of *Bruton* is unreasonable when several federal judges have had the same thought. *See United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Although the parties do not discuss it, we also note that the *Bruton* rule guards against a risk that arises in joint trials, and Johnson and O'Reilly were not tried together. Therefore, even if *Bruton* did apply to nontestimonial statements, it is unclear that it would apply to this case."); *United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007) ("*Bruton* applies only where co-defendants are tried jointly, and is inapplicable when the non-testifying codefendant is severed out, as was the case here."); *United States v. Valdes-Fiallo*, 213 F. App'x 957, 960 (11th Cir. 2007) ("[T]he *Bruton* rule only applies to situations in which a non-testifying co-defendant's statement is admitted against a defendant in a joint trial[.]").

Accordingly, if Hatfield intended to raise a claim based on *Bruton*, he has not cleared § 2254(d)'s bar to relief.

### 3.

Although there is doubt as to whether Hatfield raised a claim based on *Bruton* in his petition, there is no doubt that he raised one based on *Crawford*. In his petition, he clearly says that Spear's testimony "violate[d] United States Supreme Court mandates within *Crawford*." (R. 1, PID 9.) Hatfield also explicitly raises *Crawford* in his reply brief. (R. 14, PID 639.)

Although Hatfield has fairly presented his *Crawford* claim to this Court, he did not fairly present it to the state courts. As mentioned, Hatfield did not make a claim based on *Crawford* on direct appeal. To the contrary, as the Michigan Court of Appeals noted, "Defendant concedes that

the statements at issue were nontestimonial and therefore not subject to the Confrontation Clause analysis in *Crawford*." *Hatfield*, 2013 WL 5629781, at *3.

Nor did Hatfield exhaust his *Crawford* claim following direct appeal. Arguably, Hatfield fairly presented that claim in his motion for relief from judgment. (*See* R. 12, PID 626.) But this Court has reviewed the state trial court docket (available online) and searched for all cases filed by Hatfield in the Michigan Court of Appeals (also available online) and it appears that Hatfield never sought leave to appeal the denial of his motion for relief from judgment from the Michigan Court of Appeals. *See* Mich. Ct. R. 6.509(A). Yet, to exhaust his *Crawford* claim, Hatfield was required to seek leave to appeal as long as doing so is a "normal, simple, and established part of the State's appellate review process." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). Michigan established the procedures for filing a motion for relief from judgment as an alternative to successive direct appeals. *See* Mich. Ct. R. 7.205, cmt. to 1989 Amendment. And the Court sees nothing abnormal or difficult about seeking leave to appeal. So the Court finds that Hatfield's *Crawford* claim is unexhausted. *See Paffhousen v. Grayson*, 238 F.3d 423 (table), 2000 WL 1888659, at *2 (6th Cir. 2000); *Smith v. Klee*, No. 11-12481, 2012 WL 2000710, at *5 (E.D. Mich. June 1, 2012).

And Hatfield cannot now exhaust this claim. Following the state trial court's denial of Hatfield's motion for relief from judgment, Hatfield had only six months to appeal. *See* Mich. Ct. R. 6.509(A), 7.205(G)(3). As the state trial court denied Hatfield's motion in 2015, six months has long since passed and, as noted, Hatfield has not appealed. Moreover, Hatfield cannot file a second motion for relief from judgment based on *Crawford* absent a showing of new evidence not discovered prior to his first motion or a retroactive change of law since his first such motion. *See* Mich. Ct. R. 6.502(G). And there is no reason to think that Hatfield could make any such showing:

his *Crawford* claim is based solely on facts known or discoverable immediately after trial and *Crawford* was decided before Hatfield's first motion for relief from judgment. Thus, it appears that Hatfield cannot now exhaust his claim based on *Crawford*. It follows that the claim is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (describing two types of procedural default).

Although federal courts should think twice about *sua sponte* dismissing a claim as defaulted, *see Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), this Court sees no way around the default. To excuse the default, Hatfield would have to show "cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006).

Hatfield cannot make this showing. True, ineffective assistance of counsel can constitute "cause" for a procedural default. *Taylor v. McKee*, 649 F.3d 446, 452 (6th Cir. 2011). So, perhaps, Hatfield would argue that his appellate counsel was ineffective for not asserting *Crawford* (or, more precisely, for conceding that *Crawford* did not apply because Roberson's statements were not testimonial). But that ineffective-assistance theory would be very weak since, consistent with Hatfield's counsel's thinking, there is significant precedent indicating that one prisoner's confession to another is not testimonial. *See Davis v. Washington*, 547 U.S. 813, 825 (2006) (suggesting, but not holding, that "statements from one prisoner to another" would be "clearly nontestimonial"); *United States v. Dargan*, 738 F.3d 643, 650–51 (4th Cir. 2013); *United States v. Pelletier*, 666 F.3d 1, 9 (1st Cir. 2011); *United States v. Pike*, 292 F. App'x 108, 112 (2d Cir. 2008); *cf. United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009). And even if Hatfield could show that his appellate counsel was ineffective for failing to assert *Crawford*, that would not explain why Hatfield himself did not exhaust his *Crawford* claim by seeking leave to appeal the

state trial court's denial of his motion for relief from judgment. Hatfield cannot blame that failure on counsel. *Cf. Kissner v. Palmer*, 826 F.3d 898, 905 (6th Cir. 2016) ("Kissner was acting pro se during his post-conviction proceedings and therefore could have raised the claims on his own."). And his pro se status and unfamiliarity with state rules of procedure do not amount to cause. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("Bonilla's pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. . . . Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default." (citations omitted)).

Nor can Hatfield demonstrate that failing to review his *Crawford* claim would result in a fundamental miscarriage of justice. That exception to a procedural default "requires a prisoner to present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017). But Hatfield has not presented any "new reliable evidence . . . that was not presented at trial." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007) (internal quotation marks and alteration omitted); *see also Harvey v. Jones*, 179 F. App'x 294, 299 (6th Cir. 2006). And even absent Spear's testimony, Pruitt still implicated Hatfield as the shooter and Hale said Hatfield was an attacker, so this Court cannot say that "no juror, acting reasonably, would have voted to find [Hatfield] guilty beyond a reasonable doubt," *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In short, this Court cannot reach the merits of Hatfield's *Crawford* claim because it is procedurally defaulted.

### 4.

Before leaving Hatfield's claims based on Spear's testimony, the Court briefly addresses one more issue.

On direct appeal, apart from the *Bruton* claim, Hatfield argued that Spear's testimony was hearsay not admissible under Michigan's rules of evidence. But violations of state rules of evidence are not a valid basis for a federal court to issue a writ of habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). True, a claim that an evidentiary error was so egregious that it violated the Due Process Clause is a cognizable habeas corpus claim. *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). But Hatfield has not argued that the admission of Spear's testimony was so egregious that it deprived him of the fundamentally fair trial promised by the Due Process Clause. He has not even taken the lesser step of citing a case addressing whether an evidentiary error amounts to a violation of the Due Process Clause. (*See generally* R. 1, R. 14.) So the Court does not find that Hatfield has properly raised a claim based on the Due Process Clause.

\* \* \*

In sum, whether based on *Bruton*, *Crawford*, or Michigan's rules of evidence, Hatfield has not shown that he is entitled to habeas corpus relief on the basis of Spear recounting Roberson's confession.

## B.

Hatfield also argues that the evidence introduced at trial would not have permitted a jury to find (beyond a reasonable doubt) that he committed or aided and abetted the two felonies— larceny or torture—upon which his first-degree felony murder conviction rests. (R. 1, PID 8–9; R. 14, PID 636, 648–51.) Hatfield focuses on the intent element of those two felonies. As to larceny, he argues that the jury heard Spear say that Griffin's attackers were merely trying to recover Roberson's gun from Griffin. So, says Hatfield, the jury lacked a sufficient basis for concluding he had the intent to take property belonging to another. (R. 14, PID 649–50.) Hatfield makes a similar argument about torture: he says that the evidence did not show that he had the

intent to cause cruel or extreme pain and suffering as that felony requires; instead the evidence revealed only an intent to recover possession of Roberson's gun. (R. 14, PID 650–51.) It follows, says Hatfield, that insufficient evidence supports his first-degree felony murder conviction, which is a violation of the Due Process Clause. (R. 14, PID 648.)

The Michigan Court of Appeals rejected this claim "on the merits." *See* 28 U.S.C. § 2254(d). Regarding torture, the appellate court first set out that crime's statutory text: "'A person who, *with the intent to cause cruel or extreme physical or mental pain and suffering*, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony[.]'" *Hatfield*, 2013 WL 5629781, at *2 (emphasis added) (quoting Mich. Comp. Laws § 750.85). Then the Michigan Court of Appeals reasoned,

> Three witnesses identified defendant as one of the three assailants who physically assaulted the victim with punches and kicks for an extended period of time, and two of those witnesses also implicated defendant as the shooter. One witness estimated the assault to have lasted for a half hour. While this is likely excessive, the testimony nevertheless showed that the assault lasted for more than a few seconds. Further, the medical examiner testified at length about the severe physical injuries, including bruises and broken bones that were suffered by the victim during the assault.

*Hatfield*, 2013 WL 5629781, at *3. The court continued, "A reasonable jury could conclude that, given defendant's participation in the extended beating of the victim and his alleged shooting of the victim, *defendant intended to cause extreme physical pain and suffering*, with great bodily injury resulting." *Id.* (emphasis added) "Thus," concluded the state appellate court, "the prosecution submitted sufficient evidence to show that defendant aided and abetted in the crime of torture." *Id.*

The applicable Supreme Court precedent here is *Jackson v. Virginia*, 443 U.S. 307 (1979), and the ruling just recounted is not contrary to *Jackson* nor does it involve an unreasonable

application of that case. *See* 28 U.S.C. § 2254(d). Pruitt, and apparently Hale too, said that Hatfield punched or kicked Griffin. (R. 12, PID 276, 281, 292.) And while Rivera and Clements did not say Hatfield was one of Griffin's attackers, they did corroborate Pruitt's testimony that multiple people repeatedly kicked and punched Griffin. (R. 12, PID 294, 300.) Rivera testified that the attack lasted "almost about a half an hour." (R. 12, PID 300.) Hale said the attack lasted for "a couple minutes, few minutes." (R. 12, PID 290.) And, as the Michigan Court of Appeals said, two witnesses (Pruitt and Spear) implicated Hatfield as the shooter. (R. 12, PID 276–77, 375.) The state appellate court was also correct that Griffin sustained several serious injuries. (R. 12, PID 382–83.) The question before the Michigan Court of Appeals was this: "after viewing the evidence in the light most favorable to the prosecution," could "*any* rational trier of fact" have found beyond a reasonable doubt that Hatfield had "the intent to cause cruel or extreme physical or mental pain and suffering" or knew that Roberson or Dixon had that intent at the time he gave aid? *Jackson*, 443 U.S. at 319; Mich. Comp. Laws § 750.85 (torture); *People v. Jackson*, 808 N.W.2d 541, 548 (Mich. Ct. App. 2011) (aiding and abetting). Given the evidence just recounted, this Court cannot say that the Michigan Court of Appeals unreasonably answered that question in the affirmative. Thus, § 2254(d) prevents this Court from granting Hatfield habeas corpus relief on his insufficient-evidence claim.

## IV.

For the reasons given, Hatfield's petition for a writ of habeas corpus is DENIED. The Court further finds that even if reasonable jurists would debate this Court's finding that Hatfield's claim based on *Crawford* is procedurally defaulted, they would not debate that Roberson's statements to Spear were testimonial such that *Crawford* would apply. *See Slack v. McDaniel*, 529 U.S. 473,

484 (2000). And reasonable jurists would not debate this Court's analysis of Hatfield's other claims. Accordingly, this Court DENIES Hatfield a certificate of appealability. *See id.*

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: March 12, 2018          United States District Court Judge